**STARK & STARK**
A Professional Corporation
By:    Craig S. Hilliard, Esq.
        Gene Markin, Esq.
100 American Metro Blvd
Hamilton, NJ 08619
(609) 895-7248
*Attorneys for Plaintiff Pocketec Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **POCKETEC INC.**,<br><br>                    Plaintiff,<br><br>         v.<br><br>**KORMAN SPORTS USA; PT SUKSES KOMERINDO; ANDREW KANG; HONEST TRADING CORP; and YONG W. KANG aka PHILIP KANG,**<br><br>                    Defendants. | **CIVIL ACTION NO.:**<br><br><br><br>**COMPLAINT** |

Plaintiff Pocketec Inc. ("Pocketec") by way of Complaint against Defendants hereby states and avers as follows:

## SUMMARY OF ACTION

1.    This matter arises out of the egregious and malicious misappropriation and infringement of Plaintiff's trademarks which were well known to Defendants.

2.    For many years, Defendant Andrew Kang manufactured golf gloves for Plaintiff using Plaintiff's COPPER TECH and LADY CLASSIC trademarks.

3.      Then looking to help his brother Philip Kang establish a business in the United States, Andrew Kang began manufacturing golf gloves for Honest Trading Corp. under the same or similar marks.

4.      Defendants conspired to misappropriate and steal Plaintiff's intellectual property for their own personal, pecuniary, and business benefit to the intended detriment of Plaintiff and its trademarks.

5.      Defendants further engaged in a widespread malicious false advertising and disparagement campaign whereby they falsely claimed that Plaintiff was not the owner of the subject marks, was an imposter and fraud, and that Defendants were the rightful owners and producers of gloves under the subject marks.

6.      Plaintiff now brings this action to put an end to Defendants' wrongful, tortious, and malicious conduct.

## PARTIES

7.      Plaintiff Pocketec Inc. ("Pocketec") is a New Jersey corporation with a principal place of business at 50 NE Dixie Hwy E7, Stuart, FL 34994.

8.      Defendant Korman Sports USA ("Korman Sports") is a California corporation with its principal place of business at 1382 Valencia Ave, Unit J, Tustin, CA 92780.

9.      Defendant PT Sukses Komerindo ("PT Sukses") is an Indonesian limited liability company with a business address at Jalan Raya Berbah Kalasan, Sumber Lor, RT 002, RW 028, Kalitirto Village, Berbah Subdistrict, Sleman Regency, Yogyakarta 55573 Indonesia.

2

10.    PT Sukses sells and distributes products in the United States by and through its affiliate Korman Sports.

11.    Defendant Andrew Kang ("Andrew") is an individual residing at 104 Calderon, Irvine, California 92618 and is the owner, principal, and manager of Korman Sports and PT Sukses.

12.    Defendant Honest Trading Corp. ("HTC") is a New Jersey corporation with a principal business address at 120 County Road, Suite 201, Tenafly, NJ 07670.

13.    Defendant Yong W. Kang aka Philip Kang ("Philip") is an individual maintaining an address at 40 Bock Dr, River Vale, NJ 07675 and is the owner, principal, and manager of HTC.

14.    Philip and Andrew are brothers.

15.    Upon information and belief, Korman Sports and PT Sukses operated as agents, affiliates, alter egos, and/or instrumentalities of Andrew Kang in carrying out the infringing conduct alleged herein.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1367 because the claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and this Court's supplemental jurisdiction.

17.    The Court has personal jurisdiction over Defendants because they are located within the State of New Jersey, conduct substantial business in the State of New Jersey, and/or have had the requisite minimum contacts with New Jersey to justify conferring jurisdiction.

3

4924-5134-6358, v. 1

18.     Defendants are further subject to personal jurisdiction because Defendants have introduced products into the stream of commerce in New Jersey, have sold infringing products in New Jersey, and target New Jersey consumers with misleading and false advertisements.

19.     Defendants purposefully availed themselves of conducting business in New Jersey by manufacturing, marketing, distributing, and selling infringing products to New Jersey consumers and retailers, engaging in repeated commercial dealings with Plaintiff, a New Jersey corporation, and committing intentional torts expressly aimed at New Jersey.

20.     PT Sukses conducted business in and targeted New Jersey consumers by and through its alter ego and/or agent Korman Sports.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, Defendants transacted business in this District, and infringing products were marketed, distributed, and sold within this District.  Venue is also proper because Defendants "reside" in this District within the meaning of 28 U.S.C. §1391(b)(1).

## BACKGROUND FACTS

LADY CLASSIC GLOVES

22.     At time of incorporation in 1990, Pocketec was a developer and marketer of consumer products for the gaming industry.

4

4924-5134-6358, v. 1

23. In 1990, Pocketec incepted a novel golfing glove for women called "Lady Classic."

24. In 1992, Pocketec patented its unique design, which provided a more comfortable glove fit for women with long nails and rings.

25. Pocketec used various manufacturers to produce its Lady Classic golf glove line.

26. In 2005, Pocketec engaged PT Sukses to manufacture and produce Pocketec's Lady Classic gloves.

27. In furtherance of PT Sukses manufacturing the gloves, Pocketec provided product designs, specifications, and placement of its Lady Classic logo and trademark.

28. In June 2005, Pocketec submitted its first purchase order for Lady Classic gloves to Korman Sports.

29. PT Sukses and Korman Sports were used interchangeably by Andrew in connection with the manufacture of the gloves.

30. PT Sukses and/or Korman Sports produced and delivered Lady Classic gloves for Pocketec for many years between June 2005 and February 2025.

31. PT Sukses manufactured (and Korman Sports distributed) more than 500,000 pairs of LADY CLASSIC gloves for Pocketec.

32. PT Sukses and Korman Sports knew, understood, and acknowledged that the Lady Classic brand, name, and trademark belonged to and was owned by Pocketec.

5

33.    Since its initial introduction into the market in 1990, Pocketec's Lady Classic women's golf glove line has been well received and the subject of extensive marketing, advertising, and promotional efforts.

34.    In July 2025, Pocketec obtained registration on its LADYCLASSIC word mark and its LADY CLASSIC design mark (together, the "LADY CLASSIC Marks") for golf gloves with a date of first use of February 1, 1990. *See* Registration Certificate No. 7855711 (Serial No. 98696325) and Registration Certificate No. 7864147 (Serial No. 98691125), attached hereto as **Exhibit A**.

35.    Pocketec's LADY CLASSIC products have been mentioned in many major publications including Sports Illustrated, Vogue, the Today Show, Good Morning America, Golf Digest, The New York Times, The San Francisco Chronicles, Fitness Magazine, and the Golf Wire.

36.    Pocketec has sold its LADY CLASSIC gloves at Golf Galaxy, Edwin Watts, and Dick's Sporting Goods.

37.    To date, Pocketec has sold approximately 2-5 million pairs of LADY CLASSIC women's golf gloves to consumers.

COPPER TECH GLOVES

38.    Wanting to enter into the men's golf glove market, in 2014, Pocketec developed designs for a copper infused men's glove it ended up branding "Copper Tech."

39.    Initially named as the "Patriot" glove, the men's glove line was later rebranded by Pocketec as "Copper Tech" (the "COPPER TECH Mark") in 2015.

6

40.    Pocketec provided product designs and specifications to PT Sukses as well as designated and directed the use and placement of its COPPER TECH Mark on the men's gloves.

41.    By way of Purchase Order dated September 17, 2015, Pocketec ordered the first batch of Copper Tech gloves from Korman Sports bearing the COPPER TECH Mark.

42.    Subsequently, PT Sukses and Korman Sports produced and delivered COPPER TECH branded gloves for Pocketec for many years.

43.    PT Sukses and Korman Sports knew, understood, and acknowledged that the Copper Tech brand, name, and trademark belonged to and was owned by Pocketec.

44.    In October 2015, Korman Sports and/or PT Sukses acknowledged in an email that "Copper Tech is a Registered Trade Mark of Pocketec Inc." in connection with finalizing the Copper Tech packaging.

45.    Indeed, a published press release in December 2015 announced that "Pocketec Inc., a leader and innovator in glove manufacturing, is launching the Copper Tech Golf Glove, a glove with the pain relief properties of copper-infused technology at the 2016 PGA Merchandise Show in Orlando, Fla., January 27-29." *See* http://www.coppertechglove.com/press-releases/.

46.    In an article published in Golf Digest on December 16, 2015, Pocketec was identified as the creator and owner of COPPER TECH gloves:

7



47.    In January 2016, Pocketec started selling its Copper Tech gloves on Amazon and fulfilled the first order on January 4, 2016.

48.    Since then, Pocketec has sold hundreds of thousands of men's golf gloves under the COPPER TECH Mark directly to consumers through its websites www.coppertechglove.com and www.coppertechgloves.com as well as on Amazon.com and Walmart.com.

49.    Pocketec has expended substantial resources to advertise, promote, and market its COPPER TECH gloves, which have amassed significant good will and reputation for quality.

4924-5134-6358, v. 1

50.     In an article published on June 5, 2018 in *The Golf Wire* magazine titled "Copper Tech Copper-Infused Compression Golf Gloves Top Father's Day Hot List," Pocketec is referenced and referred to as the "manufacturers of Copper Tech."

51.     Also, Costco and PGA Golf Superstore websites have featured the COPPER TECH golf glove and referred to Pocketec by name.

52.     Plaintiff sells its COPPER TECH gloves online and at Big Box retail outlets such as PGA Tour Superstore and Costco.

53.     Plaintiff has sold approximately 500,000 pairs of COPPER TECH gloves.

HONEST TRADING CORP.

54.     In 2018, Philip requested that Pocketec send him two dozen Copper Tech Gloves, which it did.

55.     In 2022, Pocketec and PT Sukses attended several golf trade shows where Philip was present.

56.     Philip inquired about Pocketec and its Lady Classic and Copper Tech gloves.

57.     Upon information and belief, at that time Philip was opening a golf store in Northvale, NJ called Golf & More.

58.     Philip had started his own brand of golf gloves called XeirPro, which was being manufactured by his brother's company, PT Sukses, and distributed by Korman Sports.

4924-5134-6358, v. 1

59. At some point, and unbeknownst to Pocketec, Philip began marketing and selling men's golf gloves under the name Copper Tech through his company HTC.

60. Philip and HTC sold competing golf gloves using Pocketec's COPPER TECH Mark on their website Xeirsports.com, at the Golf & More store and through online retailers Amazon.com and Walmart.com.

61. Unbeknownst to Pocketec, PT Sukses was manufacturing (and Korman Sports distributing) golf gloves for Philip and HTC containing the COPPER TECH Mark without Pocketec's permission and in violation of Pocketec's intellectual property rights.

62. According to filings made in connection with a WIPO proceeding in 2025, HTC asserted it sold approximately 20,000 gloves from 2020-2023 and approximately 48,000 from 2023-2025.

INFRINGEMENT

63. In or about 2023, HTC began selling competing golf gloves using the infringing marks NEW LADY CLASSIC and COPPER TECH as well as using Plaintiff's trade dress and packaging slogans.

64. On August 25, 2024, Philip purchased the domain www.coppertechsports.com and began falsely claiming he was the owner and founder of Copper Tech gloves.

65. HTC has sold and continued to sell competing gloves using Pocketec's COPPER TECH mark in various forms, *i.e.* COPPER TECH, COPPER TECH PLUS, and ADVANCED COPPER TECH.

10

4924-5134-6358, v. 1

66.     Philip and HTC also started selling competing women's golf gloves under the strikingly similar mark "New Lady Classic" on Amazon.com, their Xeirsports.com website, and Kormansports.com:



67.     On its New Lady Classic Amazon store, HTC misrepresented that it is the owner of LADY CLASSIC and stated its decision to sell New Lady Classic gloves stemmed from "brand renovation."

68.     Later, after confronted about the infringement, HTC rebranded as CADDY CLASSIC, however, it continued to use LADY CLASSIC packaging and added cover-up stickers over the name.

69.     Despite Defendants receiving several cease-and-desist letters from Plaintiff, they continued the infringement knowingly, willfully, and intentionally.

70.    Plaintiff has received numerous inquiries from unhappy customers who purchased Copper Tech golf gloves from HTC and complained to Plaintiff about the poor quality of the products.

71.    Plaintiff received complaints from disappointed customers who purchased subpar goods from HTC but then blamed Plaintiff for the poor quality.

72.    Plaintiff, however, had no record of ever selling any products to these customers, including Jeanne Dussault, Amy Ghadban, Susan Ierfino, and Conor Barry.

73.    Plaintiff has also been contacted by customers who believed Plaintiff sold them gloves that were in fact sold by HTC.

74.    Consumers specifically contacted Pocketec believing they had purchased Pocketec products when in fact they had purchased HTC products, demonstrating actual marketplace confusion as to source, affiliation, and sponsorship.

75.    Most recently, a customer who purchased COPPER TECH pickleball gloves from HTC's Amazon store wrote to Plaintiff complaining that she received "half glove" golf gloves instead.

FALSE ADVERTISING & DISPARAGEMENT

76.    In connection with the sale of infringing Copper Tech gloves, HTC has held itself out and represented to consumers that it is the founder and creator of COPPER TECH and warns consumers of counterfeits and illegitimate competitors using the COPPER TECH name.

12

77.     HTC has also falsely advertised and represented that HTC has relationships with big-name retailers such as Costco, Walmart, GolfBox, and PGA Tour Superstore when in fact Pocketec has the relationships and those retailers sell products supplied by Pocketec not HTC.

78.     On its website www.coppertechsports.com, HTC represents that its website "is the only website with 100% exclusive rights to wholesale copper tech gloves direct from our partnered factory."

79.     This statement is false and purposefully misleading since HTC is not the owner of the COPPER TECH Mark and Pocketec is the rightful owner and has the "100% exclusive rights" to sell COPPER TECH branded gloves.

80.     On its website, HTC maintains an "Authenticity" page whereby it disparages Pocketec by asserting that Pocketec's websites coppertechgloves.com and coppertechglove.com "are imitating our brand mission and value with malicious intent." *See* https://www.coppertechsports.com/pages/authenticity.

81.     HTC falsely claims it is "the only place to get the real Copper Tech glove" and that only HTC offers "authentic Copper Tech Golf Gloves – designed, tested, and distributed by the original creators of the brand."

82.     Incredulously, after stealing the brand name from Pocketec and using it to sell inferior golf gloves, HTC has the audacity to claim it is the "original creator[] of the brand."

83.     HTC further asserts that Copper Tech gloves sold by Official Copper Tech Plus (*i.e.*, Pocketec) on Amazon are "fake."

4924-5134-6358, v. 1

84.    HTC further disparages and defames Pocketec by stating in an "Authenticity Alert" on its FAQ page that coppertechgloves.com and coppertechglove.com are "imitation websites" and "unauthorized sellers offering counterfeit products."

85.    All the aforementioned statements, representations, and advertisements are knowingly false, purposefully misleading, and intended to harm the business and reputation of Pocketec.

TRADEMARK REGISTRATIONS

86.    In September 2024, HTC submitted an application to register the mark "NEW LADY CLASSIC" for Class 28 golf gloves, which was initially refused and then suspended due to Pocketec's prior applications to register its LADY CLASSIC Marks. *See* Serial No. 98731653.

87.    In April 2019, Andrew applied to register the mark "COPPER ADVANCED TECH" for Class 28 variety of athletic gloves, including golf gloves, which was registered on the Supplemental Register in December 2019.    *See* Registration Certificate No. 5952079 (Serial No. 88401390), attached hereto as **Exhibit B**.

88.    In August 2024, HTC applied to register the mark "COPPER TECH" for Class 28 golf gloves.    *See* Serial No. 98681922.

89.    Incredulously, the specimen HTC submitted in support of its application had *Pocketec's website* (www.coppertechglove.com) listed on the glove as well as on the packaging:

14



[*See* https://tsdr.uspto.gov/documentviewer?caseId=sn98681922&docId=SPE20240805082314&linkId=17#docIndex=16&page=1.]

90.     The application proceeded to publication on February 11, 2026.

91.     In September 2024, HTC applied to register the mark "COPPER TECH"

for Class 10 compression gloves containing copper claiming first use in March 2009.

92. In its responses to office actions, HTC represented it has used the COPPER TECH mark in commerce from March 1, 2015 and the COPPER ADVANCED TECH mark from January 23, 2018.

93. HTC also boasted about its extensive marketing spend, high volume sales on Amazon.com, and active social media presence in support of its acquired distinctiveness argument.

94. In April 2026, the USPTO issued a certificate of registration to HTC for the COPPER TECH Mark. *See* Registration No. 8200805 Certificate, attached hereto as **Exhibit C**.

95. In June 2025, HTC submitted an application to register the mark "COPPER TECH +" for Class 28 golf gloves, which was suspended pending registration of the COPPER TECH Mark. *See* Serial No. 99249402.

96. In August 2025, HTC submitted an application to register the mark "COPPER TECH WEATHER GUARD" for Class 28 golf gloves containing copper, which has proceeded to publication in February 2026. *See* Serial No. 99361630.

97. In September 2025, HTC submitted an application to register the mark "COPPER TECH PLUS" for Class 28 golf clubs containing copper, which was suspended as of March 2026. *See* Serial No. 99368183.

98. In January 2026, HTC submitted an application to register trade dress representing the front side of packaging containing the wording "NOW WITH MORE COPPER! PAIN RELIEF COPPER TECH COPPER INFUSED TECHNOLOGY" for

16

golf gloves, compression gloves, and gardening gloves (the "Front Packaging Trade Dress Mark"). *See* Serial No. 99612597.

99. Contemporaneously, HTC also submitted an application to register trade dress representing the back side of packaging containing the wording "NOW WITH MORE COPPER! PAIN RELIEF COPPER TECH COPPER INFUSED TECHNOLOGY 6 KEY BENEFITS 1 COPPER INFUSED TECHNOLOGY IMPROVES HEALTH & PERFORMANCE. 2 NON-SLIP WOVEN SILICON PATTERN IMPROVES SLIP RESISTANCE. 3 SUPPORTS IMPROVED CIRCULATION AND OXYGENATION OF WORKING MUSCLES & JOINTS. 4 HELPS PREVENT STRAIN AND FATIGUE BY KEEPING MUSCLES & JOINTS WARM. 5 WICKS SWEAT AWAY FROM THE BODY TO PREVENT CHAFING RASHES & ODOR. 6 PROVIDES SUPPORT FOR MUSCLE STIFFNESS, SORENESS & PAIN. HELPS TO REDUCE RECOVERY TIME OF MUSCLES." for golf gloves, compression gloves, and gardening gloves (the "Back Packaging Trade Dress Mark"). *See* Serial No. 99612598.

100. The Front Packaging Trade Dress Mark and Back Packaging Trade Dress Mark (the "Trade Dress Marks") are identical to Pocketec's packaging trade dress marks it has used in connection with the promotion, sale, and marketing of its COPPER TECH gloves since before HTC ever came into existence.

101. The applications state that HTC has used the applied-for trade dress marks since March 2009, which is false.

17

102. HTC merely copied Pocketec's trade dress designs and wordings and sought to obtain a trademark registration using Pocketec's intellectual property.

103. In April 2026, the USPTO issued a non-final office action letter in both applications to which HTC has not yet responded.

104. The Trade Dress Marks are non-functional, distinctive, and serve to identify Pocketec as the source of the products.

## COUNT ONE
### CANCELLATION OF REGISTRATIONS
### FOR FRAUD UPON THE USPTO

105. Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

106. In December 2019, Andrew obtained Registration No. 5,952,079 for the COPPER ADVANCED TECH Mark based on misrepresentations of exclusive use and affirmation that no other person had the right to use such mark in commerce.

107. Specifically, in April 2019, Andrew certified and represented that: (i) Andrew "is the owner of the trademark/service mark sought to be registered"; (ii) "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive"; and (iii) "the facts recited in the application are accurate".

4924-5134-6358, v. 1

108.  By signing the application, Andrew acknowledged and agreed that "willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

109.  These statements, representations, and affirmations, however, were knowingly false and misleading.

110.  At the time Andrew signed the application, he knew that Pocketec had priority rights to the COPPER TECH Mark and that Andrew was not authorized to use the COPPER TECH Mark.

111.  Andrew also knew that the statements made in support of the application were false, untrue, and misleading due to Pocketec's priority use and priority rights in and to the COPPER TECH Mark.

112.  Andrew committed fraud by not disclosing to the USPTO that Pocketec was then using and had been using the COPPER TECH Mark since 2015, and that Andrew did not have permission to use the COPPER TECH Mark or the substantially similar applied-for-mark COPPER ADVANCED TECH.

113.  The registration was obtained fraudulently, *inter alia*, in that the formal application papers filed by Andrew, under 15 U.S.C. §1051(a), on or about April 25, 2019, declared that no other person, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form of the mark or in such

19

near resemblance to the mark as to be likely, when used on or in connection with the goods or services of such other person, to cause confusion, mistake, or deception.

114. That statement was false because Andrew knew that Pocketec used the COPPER TECH Mark, which was wholly integrated and used as part of the applied-for COPPER ADVANCED TECH Mark, in connection with the sale, promotion, and advertising of golf gloves, and that it was likely to cause confusion mistake or deception.

115. In April 2026, HTC obtained Registration No. 8,200,805 for the COPPER TECH Mark based on misrepresentations of exclusive use and affirmation that no other person had the right to use such mark in commerce.

116. Specifically, in August 2024, HTC certified and represented that: (i) HTC "is the owner of the trademark/service mark sought to be registered"; (ii) "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive"; and (iii) "the facts recited in the application are accurate".

117. By signing the application, HTC acknowledged and agreed that "willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

20

118. These statements, representations, and affirmations, however, were knowingly false and misleading.

119. At the time HTC signed the application, it knew that Pocketec had priority rights to the COPPER TECH Mark and that HTC was not authorized to use the COPPER TECH Mark.

120. HTC also knew that the statements made in support of the application were false, untrue, and misleading due to Pocketec's priority use and priority rights in and to the COPPER TECH Mark.

121. HTC represented that it, a related company or licensee predecessor in interest has used the COPPER TECH Mark as early as 3/20/2009 and has used it in commerce since 3/1/2015, and that these assertions have "evidentiary support."

122. HTC, however, does not have evidentiary support for its asserted use dates and has not used that mark since 2009.

123. HTC further committed fraud by not disclosing to the USPTO that Pocketec was then using and had been using the COPPER TECH Mark since 2015, and that HTC did not have permission to use the COPPER TECH Mark.

124. The registration was obtained fraudulently, *inter alia*, in that the formal application papers filed by HTC, under 15 U.S.C. §1051(a), on or about September 3, 2024, declared that no other person, to the best of his or her knowledge and belief, has the right to use such mark in commerce either in the identical form of the mark or in such near resemblance to the mark as to be likely, when used on or in connection

4924-5134-6358, v. 1

with the goods or services of such other person, to cause confusion, mistake, or deception.

125. That statement was false because HTC knew that Pocketec used the COPPER TECH Mark in connection with the sale, promotion, and advertising of golf gloves, and that it was likely to cause confusion, mistake or deception.

126. The foregoing statements and representations in connection with the COPPER ADVANCED TECH and COPPER TECH applications were made by Andrew and HTC and/or their authorized agent with knowledge and belief that those statements were false.

127. The foregoing statements and representations were made with the intent to induce authorized agents of the USPTO to grant said registrations including the examining attorney, and reasonably relying upon the truth of said false statements, the USPTO did, in fact grant said registrations.

128. The foregoing misrepresentations concern facts that are material to the applications and the USPTO's decision to issue the referenced trademark registrations.

129. Andrew and HTC knowingly made the foregoing false, material misrepresentations of fact in connection with its application with the intent to deceive the USPTO.

130. The inclusion of Pocketec's own website address on HTC's specimen submission demonstrates Defendants' actual knowledge that the COPPER TECH Mark belonged to Pocketec and not HTC.

22

131.  Defendants did not merely fail to investigate competing rights; rather, they had actual knowledge that Pocketec conceived, marketed, sold, and owned the COPPER TECH branded golf gloves and intentionally misrepresented ownership and first-use information to the USPTO in order to usurp Pocketec's intellectual property.

132.  Andrew manufactured Pocketec's products for years before filing; HTC used Pocketec's own website in specimen submissions; and Defendants claimed 2009 use predates HTC existence and contradicts documentary history.

133.  As such, because Andrew and HTC committed fraud in the procurement of their registrations, the entire resulting registrations are void and must be cancelled.

134.  Pocketec has been damaged and will continue to be damaged because of Andrew and HTC's continued registration.

135.  The registered marks stand as a bar to Pocketec's ability to federally register and protect its COPPER TECH Mark.

**WHEREFORE**, Pocketec demands judgment against Andrew and HTC as follows:

a.  declaring and adjudging, pursuant to 15 U.S.C. § 1119, that Andrew and HTC committed fraud in their trademark applications for the Copper Advanced Tech and Copper Tech Marks;

b.  cancelling Registration No. 5,952,079 (the "COPPER ADVANCED TECH" Mark);

c.  cancelling Registration No. 8,200,805 (the "COPPER TECH" Mark);

23

d.  ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

e.  awarding Pocketec such other relief as the Court deems equitable and just

## COUNT TWO
### CANCELLATION BASED UPON PRIORITY AND LIKELIHOOD OF CONFUSION

136.  Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

137.  Prior to Defendants' adoption and use in commerce of COPPER ADVANCED TECH and COPPER TECH marks, Pocketec had used in commerce and acquired common law rights to the COPPER TECH Mark.

138.  Similarly, prior to Defendants' adoption and use of the applied-for trade dress marks and wordings, Pocketec had used in commerce and acquired common law rights to those trade dress marks and used the same wording.

139.  The Parties used their respective marks in connection with identical or nearly identical goods and services, *i.e.* golf gloves.

140.  The marks are used to market, promote, and advertise to substantially the same target market, *i.e.* golf players and enthusiasts.

141.  HTC's marks are identical to and/or confusingly similar to Pocketec's Marks and results in actual confusion and likelihood of confusion among consumers in the marketplace.

4924-5134-6358, v. 1

142.    Pocketec has expended considerable effort and expense in promoting its trademark and the goods/services sold under its COPPER TECH Mark.

143.    Pocketec has an exceedingly valuable goodwill established in the COPPER TECH Mark.

144.    If HTC is permitted to retain Registration Nos. 5,952,079 and 8,200,805, and thereby the prima facie exclusive right to use in commerce the Copper Tech Marks on the identical goods sold by Pocketec, confusion in trade is likely to result from any concurrent use of both marks all to the great detriment of Pocketec which has expended considerable sums and effort in promoting its priority mark.

145.    Pocketec has been damaged and will continue to be damaged because of HTC's continued registrations.

146.    The registered marks stand as a bar to Pocketec's ability to federally register and protect its COPPER TECH Mark.

**WHEREFORE**, Pocketec demands judgment against HTC as follows:

   a. declaring and adjudging, pursuant to 15 U.S.C. § 1119, that Pocketec's COPPER TECH Mark has priority over HTC's marks and that the USPTO should have never issued the registrations for the junior HTC marks on the grounds that they are confusingly similar to Pocketec's senior COPPPER TECH Mark;

   b. ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

25

4924-5134-6358, v. 1

c.  cancelling Registration Nos. 5,952,079 and 8,200,805;

d.  awarding Pocketec such other relief as the Court deems equitable and just.

## COUNT THREE
### DECLARATORY JUDGMENT INVALIDATING PENDING TRADEMARK APPLICATIONS

147.  Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

148.  In addition to the Registrations obtained by HTC, which should be cancelled pursuant to Counts I and II above, HTC has several pending trademark applications to register the marks "NEW LADY CLASSIC", "COPPER TECH +", "COPPER TECH WEATHER GUARD", "COPPER TECH", "COPPER TECH PLUS", and the Trade Dress Marks (together, the "Pending Applications") for Class 28 golf gloves.

149.  The Pending Applications are based on the assertion that HTC has exclusive, priority rights to the COPPER TECH and LADY CLASSIC marks as well as the Trade Dress Marks, which it does not.

150.  Pocketec has exclusive, priority rights to the COPPER TECH, LADY CLASSIC, and Trade Dress marks and therefore will be harmed and damaged should any of the Pending Applications proceed to registration.

151.  In lieu of commencing separate opposition proceedings to oppose the Pending Applications, Pocketec brings this declaratory judgment action seeking relief by way of an order declaring each of the Pending Applications null and void and

26

4924-5134-6358, v. 1

directing the USPTO to cause the Pending Applications to be withdrawn or abandoned.

152.    A genuine, ripe dispute exists between the Parties as the rights and ownership of the COPPER TECH and LADY CLASSIC Marks as well as the Trade Dress Marks.

153.    Due to Pocketec's superior, priority rights in and to those Marks, HTC should be prohibited and estopped from continuing or proceeding with any of the Pending Applications.

**WHEREFORE**, Pocketec demands judgment against HTC as follows:

a.    declaring and adjudging that Pocketec's COPPER TECH and LADY CLASSIC Marks have priority over HTC's applied-for marks, that Pocketec is the owner of the Trade Dress Marks and has used them in commerce prior to when HTC started using those Marks, and that the USPTO should cancel the Pending Applications;

b.    ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

c.    alternatively, ordering HTC to withdraw the Pending Applications;

d.    awarding Pocketec such other relief as the Court deems equitable and just.

27

4924-5134-6358, v. 1

## COUNT FOUR
### TRADEMARK INFRINGEMENT
(15 U.S.C. § 1125)

154.  Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

155.  Pocketec has priority rights in and to the COPPER TECH and LADY CLASSIC trademarks as well as the Trade Dress Marks (the "Pocketec Marks").

156.  Pocketec used the Pocketec Marks in commerce prior to HTC's use and adoption of its COPPER ADVANCED TECH, COPPER TECH, NEW LADY CLASSIC, COPPER TECH +, COPPER TECH WEATHER GUARD, COPPER TECH, COPPER TECH PLUS, and trade dress trademarks (the "HTC Marks").

157.  The HTC Marks are identical and confusingly similar to the Pocketec Marks.

158.  Andrew and Philip knowingly and purposefully copied the Pocketec Marks in creating the HTC Marks.

159.  HTC's unauthorized use of the Pocketec Marks constitutes infringement of the Pocketec Marks.

160.  The infringement was directed, authorized, controlled and approved by Andrew and Philip who knew of Pocketec's ownership of and intellectual property rights in and to the Pocketec Marks.

161.  Notwithstanding Pocketec's superior rights in the Pocketec Marks by and through prior use of its marks consisting of the words "copper," "tech," "lady," and "classic" in connection with the marketing and sale of functional golf gloves for

28

4924-5134-6358, v. 1

golf players and enthusiasts, HTC – at the direction of Andrew and/or Philip – has and is continuing to advertise, market, distribute, and sell substantially similar goods and services using the confusingly similar HTC Marks.

162. As such, HTC, Andrew, and Philip have infringed Plaintiff's Pocketec Marks, in violation of 15 U.S.C. § 1125 (Lanham Act § 43), which imposes liability for use in commerce of any word, term, or name which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, and/or association of HTC with Pocketec, and/or as to the origin, sponsorship, and/or approval of the HTC Marks by Pocketec.

163. Defendants have infringed on the Pocketec Marks in connection with the sale of competitor golf gloves as well as, more recently, pickleball gloves.

164. Defendants have further infringed by using confusingly similar and infringing website domain www.coppertechsports.com.

165. Defendants' use further infringes Pocketec's rights in its Pocketec Marks under New Jersey and other applicable common law.

166. Defendants' adoption and continued use of the Pocketec Marks has been in knowing, intentional, and willful disregard and violation of Pocketec's rights.

167. Andrew and Philip are personally liable for the infringement as they personally participated in the infringing conduct, knowingly and intentionally caused the infringement, and were each a moving active conscious force behind the infringement.

29

168. Pocketec has been damaged and continues to be directly damaged by HTC's use and infringement of Pocketec's trademarks.

169. Unless enjoined by this Court, HTC will continue to infringe the Pocketec Marks, thereby deceiving the public and causing Pocketec to suffer immediate and irreparable injury, for which it has no adequate remedy at law.

**WHEREFORE**, Pocketec demands judgment against HTC, Andrew, and Philip, jointly and severally, as follows:

a. finding the use of the HTC Marks has infringed on the Pocketec Marks in violation of 15 U.S.C. § 1125 (Lanham Act § 43);

b. preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods including pickleball gloves, sports gloves, outdoor gloves, knee sleeves, hats, etc.;

c. ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

d. impoundment and/or destruction pursuant to 15 U.S.C. § 1118;

e. an accounting of all sales activity, revenues, and profits received by Defendants in connection with the production and sale of infringing products;

f. awarding Pocketec compensatory damages;

g. awarding Pocketec consequential damages;

4924-5134-6358, v. 1

h. awarding Pocketec disgorgement of HTC's profits pursuant to 15 U.S.C. § 1117;

i. awarding Pocketec costs of suit pursuant to 15 U.S.C. § 1117;

j. awarding Pocketec reasonable attorney's fees pursuant to 15 U.S.C. § 1117

k. awarding enhanced damages due to willfulness;

l. awarding Pocketec pre- and post-judgment interest;

m. awarding Pocketec such other relief as the Court deems equitable and just.

## COUNT FIVE
### TRADEMARK INFRINGEMENT
(15 U.S.C. § 1114)

170. Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

171. Pocketec is the owner of valid federally registered trademarks including Registration Nos. 7855711 and 7864147 for the LADY CLASSIC Marks.

172. Defendants' use of NEW LADY CLASSIC and substantially similar marks in commerce in connection with identical goods is likely to cause confusion, mistake and deception.

173. Defendants' conduct constitutes infringement of federally registered trademarks under 15 U.S.C. §1114(1).

**WHEREFORE**, Pocketec demands judgment against HTC, Andrew, and Philip, jointly and severally, as follows

4924-5134-6358, v. 1

a. finding the use of the HTC Marks has infringed on the Pocketec's federally registered LADY CLASSIC Marks in violation of 15 U.S.C. § 1114;

b. preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods including pickleball gloves;

c. ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

d. impoundment and/or destruction pursuant to 15 U.S.C. § 1118;

e. an accounting of all sales activity, revenues, and profits received by Defendants in connection with the production and sale of infringing products;

f. awarding Pocketec compensatory damages;

g. awarding Pocketec consequential damages;

h. awarding Pocketec disgorgement of HTC's profits pursuant to 15 U.S.C. § 1117;

i. awarding Pocketec costs of suit pursuant to 15 U.S.C. § 1117;

j. awarding Pocketec reasonable attorney's fees pursuant to 15 U.S.C. § 1117

k. awarding enhanced damages due to willfulness;

l. awarding Pocketec pre- and post-judgment interest;

32

m. awarding Pocketec such other relief as the Court deems equitable and just.

## COUNT SIX
### FALSE DESIGNATION OF ORIGIN

174.   Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

175.   HTC, at the direction and behest of Andrew and/or Philip, willfully and intentionally adopted and used marks confusingly similar to Plaintiff's Pocketec Marks in order to steal and usurp Plaintiff's goodwill.

176.   Plaintiff is the valid owner of the distinctive Pocketec Marks.

177.   HTC has used confusingly similar words, names, terms, symbols, or combination thereof in interstate commerce to sell competing goods.

178.   As a result, HTC has caused confusion and deception amongst consumers as to the quality and source of Plaintiff's products.

179.   HTC's unauthorized infringing use of the HTC Marks falsely suggests that HTC's goods originate from Plaintiff or are affiliated with, sponsored by, or approved by Plaintiff.

180.   By reason of the foregoing, HTC has violated Section 43 of the Lanham Act by using, in connection with its goods and advertisements, false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of Plaintiff with HTC and as to the origin, sponsorship, or approval of HTC's goods, services and commercial activities.

4924-5134-6358, v. 1

181. As a result, Plaintiff has been irreparably harmed and will continue to suffer damage until an appropriate injunction and damage award, including increased treble damages and attorneys' fees, are imposed by this Court against HTC.

**WHEREFORE**, Pocketec demands judgment against HTC, Andrew, and Philip, jointly and severally as follows:

 a. finding the use of the HTC Marks has infringed on the Pocketec Marks in violation of 15 U.S.C. § 1125 (Lanham Act § 43);

 b. preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods including pickleball gloves, sports gloves, outdoor gloves, knee sleeves, hats, etc.;

 c. awarding Pocketec compensatory damages;

 d. awarding Pocketec consequential damages;

 e. awarding Pocketec disgorgement of HTC's profits pursuant to 15 U.S.C. § 1117;

 f. awarding Pocketec costs of suit pursuant to 15 U.S.C. § 1117;

 g. awarding Pocketec reasonable attorney's fees pursuant to 15 U.S.C. § 1117

 h. awarding Pocketec pre- and post-judgment interest;

 i. awarding Pocketec such other relief as the Court deems equitable and just.

4924-5134-6358, v. 1

## COUNT SEVEN
### UNFAIR COMPETITION

182. Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

183. HTC has knowingly, willfully, and in bad-faith adopted and used marks confusingly similar to Plaintiff's Pocketec Marks and designations to steal and trade-off the goodwill of Plaintiff.

184. HTC's use of the HTC Marks, which are confusingly similar to the Pocketec Marks and are likely to cause consumer confusion, constitutes unfair competition under New Jersey and other applicable common law.

**WHEREFORE**, Pocketec demands judgment against HTC as follows:

a. finding HTC has engaged in unfair competition as a result of its use of the confusingly similar HTC Marks in violation of New Jersey and other applicable state unfair competition law;

b. preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods including pickleball gloves, sports gloves, outdoor gloves, knee sleeves, hats, etc.;

c. ordering transfer to Pocketec of all infringing domain names, social media accounts, and trademark applications or registrations incorporating the Pocketec Marks;

d. awarding Pocketec compensatory damages;

e. awarding Pocketec consequential damages;

35

f.  awarding Pocketec statutory damages, treble damages, and special

damages as authorized by state law;

g.  awarding Pocketec pre- and post-judgment interest;

h.  awarding Pocketec such other relief as the Court deems equitable

and just.

## <u>COUNT EIGHT</u>
### DILUTION

185.  Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

186.  The Pocketec Marks are famous and widely recognized by the general consuming public of the United States.

187.  Pocketec's Copper Tech gloves are one of three brands sold by Costco online across the country.

188.  Moreover, Copper Tech offerings on Amazon have thousands of reviews and customer comments.

189.  As a result of Plaintiff's extensive use of the Pocketec Marks, including duration and extent of use, advertising and publicity, geographic reach, and degree of recognition, the Pocketec Marks are famous and widely recognized.

190.  HTC is using the HTC Marks, which are confusingly similar to the Pocketec Marks, in commerce in connection with competing goods, *i.e.* golf gloves.

191.  HTC's infringing and unauthorized use began after the Pocketec Marks acquired famous status.

36

192. HTC's use impairs or likely impairs Pocketec Marks' distinctiveness and harms the Marks' reputation and status.

193. HTC's use weakens the Pocketec Marks' distinctive association with a single source.

194. HTC's use also harms the reputation of the Pocketec Marks through tarnishment.

195. As such, HTC is liable for dilution under liable for dilution under applicable state law.

**WHEREFORE**, Pocketec demands judgment against HTC as follows:

    a. finding HTC has diluted Plaintiff's famous Pocketec Marks in violation of the Lanham Act and applicable state law;

    b. preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods including pickleball gloves, sports gloves, outdoor gloves, knee sleeves, hats, etc.;

    c. ordering HTC to engage in curative advertising;

    d. awarding Pocketec compensatory damages;

    e. awarding Pocketec consequential damages;

    f. awarding Pocketec pre- and post-judgment interest;

    g. awarding Pocketec such other relief as the Court deems equitable and just.

4924-5134-6358, v. 1

## COUNT NINE
### FALSE ADVERTISING

196. Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

197. HTC has made and distributed in interstate commerce and in this District advertisements that contain false and misleading statements of fact regarding its products.

198. These advertisements contain actual misstatements and misleading statements or failures to disclose, specifically that: (i) HTC is the founder and creator of COPPER TECH; (ii) HTC has relationships with big-name retailers such as Costco, Walmart, GolfBox, and PGA Tour Superstore; (iii) HTC's website www.coppertechsports.com "is the only website with 100% exclusive rights to wholesale copper tech gloves direct from our partnered factory"; (iv) HTC is "the only place to get the real Copper Tech glove"; and (v) HTC offers "authentic Copper Tech Golf Gloves – designed, tested, and distributed by the original creators of the brand."

199. These statements actually deceive, or have a tendency to deceive, a substantial segment of HTC's customers and potential customers.

200. This deception is material in that it concerns a characteristic or attribute of HTC's products and has and/or is likely to influence the purchasing decisions of HTC's customers.

201. HTC's false and misleading advertising statements and omissions injure both consumers and Plaintiff.

4924-5134-6358, v. 1

202.   HTC's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

203.   HTC has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation and goodwill, for which there is no adequate remedy at law.  Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining HTC, its agents, employees, representatives and all persons acting in concert with HTC from engaging in future acts of false advertising and ordering removal of all of HTC's false advertisements.

204.   Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from HTC the damages sustained by Plaintiff as a result of HTC's acts in violation of 15 U.S.C. § 1125(a).

205.   Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from HTC the gains, profits and advantages that HTC has obtained as a result of HTC's acts in violation of 15 U.S.C. § 1125(a).

206.   Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this action.  HTC's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

**WHEREFORE**, Pocketec demands judgment against HTC as follows:

    a. For temporary, preliminary and permanent injunctive relief prohibiting HTC, its agents, or anyone working for, in concert with or on behalf of HTC from engaging in false or misleading advertising

39

with respect to its glove products and/or violating Section 43(a) of the Lanham Act, which relief includes but is not limited to removal of all false or misleading advertisements and corrective advertising to remedy the effects of HTC's false advertising;

b. For an order requiring HTC to correct any erroneous impression persons may have derived concerning the nature, characteristics or source of its golf gloves, including without limitation the placement of corrective advertising and providing written notice to the public;

c. That HTC be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, characteristics, creation, and source of its golf gloves;

d. That Plaintiff be awarded damages Plaintiff has sustained as a consequence of HTC's actions;

e. That Plaintiff be awarded HTC's profits obtained by HTC as a consequence of HTC's conduct;

f. That Plaintiff recover its costs and attorney fees;

g. That all of HTC's misleading and deceptive materials be removed and destroyed pursuant to 15 U.S.C. § 1118;

h. That Plaintiff be granted prejudgment and post-judgment interest; and

4924-5134-6358, v. 1

i.  That Plaintiff have such other and further relief as this Court deems equitable, appropriate and proper

## COUNT TEN
### COMMERCIAL DISPARAGEMENT

207.   Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

208.   HTC and Philip have made several false and misleading statements concerning Pocketec and Pocketec's business that have been communicated and published to the public, including consumers of Pocketec's products.

209.   HTC and Philip have publicly asserted by and through HTC's website, blogs, and other internet outlets that Pocketec's websites coppertechgloves.com and coppertechglove.com "are imitating our brand mission and value with malicious intent."  *See* https://www.coppertechsports.com/pages/authenticity.

210.   HTC and Philip further falsely claim that Pocketec is an "imitator" and "unauthorized seller" and its products are "fake" and "counterfeit."

211.   Defendants have made these statements with knowledge of their falsity or reckless disregard for their truth or falsity.

212.   As a result, Pocketec has suffered specific, quantifiable special damages and economic losses, including lost customers, impaired relationships with retailers, and loss of business relationships.

213.   Based on HTC's false statements and disparagement, Pocketec's UK distributor decided to stop doing business with Pocketec and started purchasing gloves elsewhere.

4924-5134-6358, v. 1

214. Consequently, HTC and Philip are liable for commercial disparagement.

**WHEREFORE**, Pocketec demands judgment against HTC and Philip, jointly and severally, as follows:

a. For temporary, preliminary and permanent injunctive relief prohibiting HTC, its agents, or anyone working for, in concert with or on behalf of HTC from making or maintain any disparaging public statements, which relief includes but is not limited to removal of all false, misleading, and disparaging statements and corrective advertising to remedy the effects of the disparagement;

b. For an order requiring HTC to correct any erroneous impression persons may have derived concerning Pocketec, including without limitation the placement of corrective advertising and providing written notice to the public;

c. That Plaintiff be awarded damages Plaintiff has sustained as a consequence of HTC's actions;

d. That Plaintiff be awarded HTC's profits obtained by HTC as a consequence of HTC's conduct;

e. That Plaintiff recover its costs and attorney fees;

f. That Plaintiff be granted prejudgment and post-judgment interest; and

4924-5134-6358, v. 1

g.  That Plaintiff have such other and further relief as this Court deems equitable, appropriate and proper.

## COUNT ELEVEN
### CONSPIRACY

215.  Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

216.  HTC, Philip, Andrew, Korman Sports and PT Sukses conspired and agreed to commit the underlying torts including stealing and infringing the Pocketec Marks.

217.  HTC, Philip, Andrew, Korman Sports and PT Sukses further agreed and conspired to make false advertising statements and to disparage Pocketec.

218.  Defendants' agreement and conspiracy was intended to disenfranchise, harm, damage, and cause injury to Pocketec and its business.

219.  Defendants communicated and planned the conspiracy via in-person meetings, text messages, and emails.

220.  Defendants committed overt acts in furtherance of the conspiracy, including but not limited to, adopted the infringing HTC Marks, manufacturing competing products under infringing marks, publishing false and misleading statements, and misrepresenting the ownership and rights to applied-for and registered trademarks.

221.  HTC has only used Korman Sports and/or PT Sukses to manufacture and produce the infringing gloves.

4924-5134-6358, v. 1

222.    Each of the Defendants has derived and received an economic benefit from the conspiracy and the underlying tortious acts, including revenue from sales, profits, distributions, etc.

223.    As a result, Plaintiff has suffered real, actual, and substantial damages and losses.

**WHEREFORE**, Pocketec demands judgment against HTC, Philip, Andrew, Korman Sports and PT Sukses, jointly and severally, as follows:

    a. finding Defendants conspired to commit the underlying torts complained of herein;

    b. awarding Pocketec compensatory damages;

    c. awarding Pocketec consequential damages;

    d. awarding Pocketec statutory damages, treble damages, and special damages as authorized by state law;

    e. awarding Pocketec pre- and post-judgment interest;

    f. awarding Pocketec such other relief as the Court deems equitable and just.

## COUNT TWELVE
### CONTRIBUTORY TRADEMARK INFRINGEMENT

224.    Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

225.    Defendants Andrew, Philip, Korman Sports, and PT Sukses each knew of and assisted HTC in infringing the Pocketec Marks.

4924-5134-6358, v. 1

226. Andrew, Korman Sports, and PT Sukses knew that the Pocketec Marks belonged to Plaintiff as a result of their manufacturing golf gloves bearing those marks for Plaintiff for many years.

227. Philip knew that Pocketec owned the Pocketec Marks, had priority rights, and did not authorize HTC to use or substantially similar marks.

228. By any through numerous communications (including WhatsApp), notices, and demands, Pocketec asserted its intellectual property rights and demanded Defendants cease and desist from using the Pocketec Marks.

229. Defendants refused and continued their infringing activity.

230. Despite actual knowledge, Defendants continued to manufacture and supply infringing goods, thereby materially contributing to the infringement.

231. Despite this knowledge and recognition of Plaintiff's intellectual property rights and the harm that would result from infringement, Defendants Andrew, Korman Sports, and PT Sukses continued to manufacture and produce infringing products for HTC.

232. Philip continued to request that his brother Andrew continue manufacturing competing products for HTC bearing the HTC Marks, which were known and intended to infringe and trade off the goodwill of the Pocketec Marks.

233. Defendants had specific knowledge of HTC's infringing conduct, had the ability to control or stop it, but instead chose to materially assist HTC in the infringement.

45

234.   Defendants were willfully blind to Pocketec's intellectual property rights and the harm caused by the infringement; in fact, Defendants intended to infringe and to cause harm.

235.   As a result, Plaintiff has been harmed and suffered extensive damages and losses.

**WHEREFORE**, Pocketec demands judgment against HTC, Andrew, Philip, Korman Sports, and PT Sukses, jointly and severally, as follows:

    a.  finding Defendants contributorily liable for trademark infringement under the Lanham Act § 43;

    b.  preliminarily and permanently enjoining Defendants from using the HTC Marks in connection with the sale of golf gloves, apparel, and other similarly related goods;

    c.  awarding Pocketec compensatory damages;

    d.  awarding Pocketec consequential damages;

    e.  awarding Pocketec disgorgement of HTC's profits pursuant to 15 U.S.C. § 1117;

    f.  awarding Pocketec costs of suit pursuant to 15 U.S.C. § 1117;

    g.  awarding Pocketec reasonable attorney's fees pursuant to to 15 U.S.C. § 1117

    h.  awarding Pocketec pre- and post-judgment interest;

    i.  awarding Pocketec such other relief as the Court deems equitable and just.

# COUNT THIRTEEN
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT
### (15 U.S.C. § 1125(d))

236.    Pocketec repeats and realleges each of the foregoing allegations as if repeated verbatim herein.

237.    Prior to Defendants' registration and use of the domain name www.coppertechsports.com, the COPPER TECH Mark had become distinctive and associated by consumers with Pocketec and its golf glove products through substantially exclusive and continuous use in commerce since at least 2015.

238.    Pocketec extensively used the COPPER TECH Mark in interstate commerce in connection with the marketing, promotion, advertising, and sale of golf gloves through, *inter alia*, the websites www.coppertechglove.com and www.coppertechgloves.com, Amazon.com, Walmart.com, Costco, PGA Tour Superstore, and other national retailers.

239.    Defendants Andrew, Philip, HTC, Korman Sports, and/or PT Sukses had actual knowledge of Pocketec's ownership and prior use of the COPPER TECH Mark before registering and using the domain name www.coppertechsports.com.

240.    On or about August 25, 2024, Philip and/or HTC registered the domain name www.coppertechsports.com.

241.    The domain name www.coppertechsports.com is confusingly similar and substantially identical to Plaintiff's distinctive COPPER TECH Mark.

4924-5134-6358, v. 1

242. Defendants registered, trafficked in, and used the domain name www.coppertechsports.com with a bad-faith intent to profit from Pocketec's COPPER TECH Mark and goodwill associated therewith.

243. Defendants' bad-faith intent to profit is evidenced by, *inter alia*, the following: (i) Defendants had actual knowledge of Pocketec's ownership and prior use of the COPPER TECH Mark due to the longstanding manufacturing and business relationship between Pocketec and Andrew, PT Sukses, and Korman Sports; (ii) Defendants intentionally adopted and used the COPPER TECH Mark to trade upon and exploit Pocketec's goodwill and reputation; (iii) Defendants used the domain name to market and sell competing golf gloves bearing the infringing HTC Marks; (iv) Defendants falsely represented that HTC was the founder, creator, and exclusive source of COPPER TECH gloves; (v) Defendants falsely accused Pocketec and its websites of selling "fake," "counterfeit," or unauthorized products; (vi) Defendants intentionally sought to divert consumers from Pocketec's websites and products for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' products and website; (vii) Defendants lacked any legitimate trademark or intellectual property rights in the COPPER TECH Mark at the time the domain name was registered; (viii) Defendants knowingly used Pocketec's own website address and branding in connection with trademark applications submitted to the USPTO; and (ix) Defendants continued using the domain name after receiving notice of Pocketec's superior rights and cease-and-desist demands.

48

244. Defendants' registration and use of the www.coppertechsports.com domain name has caused and continues to cause confusion, mistake, and deception among consumers and has damaged Pocketec and its valuable goodwill and reputation.

245. By reason of the foregoing, Defendants have violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

**WHEREFORE**, Pocketec demands judgment against Defendants HTC, Philip, Andrew, Korman Sports, and PT Sukses, jointly and severally, as follows:

a. finding Defendants liable for cybersquatting in violation of 15 U.S.C. § 1125(d);

b. ordering transfer of the infringing domain to Pocketec pursuant to 15 U.S.C. §1125(d)(1)(C);

c. preliminarily and permanently enjoining Defendants from using the domain name www.coppertechsports.com and any other domain names confusingly similar to the Pocketec Marks;

d. ordering transfer of the domain name www.coppertechsports.com to Pocketec;

e. awarding Pocketec Defendants' profits, damages, and costs pursuant to 15 U.S.C. § 1117;

f. awarding statutory damages pursuant to 15 U.S.C. § 1117(d);

g. awarding Pocketec reasonable attorneys' fees and enhanced damages due to Defendants' willful and exceptional conduct;

4924-5134-6358, v. 1

h.    awarding pre- and post-judgment interest; and

i.    awarding such other and further relief as the Court deems equitable and

just.

**STARK & STARK**
A Professional Corporation


By:  /s/ *Gene Markin*
       CRAIG S. HILLIARD, ESQ.
       GENE MARKIN, ESQ.

Dated: June 18, 2026


## DEMAND FOR JURY TRIAL

Pocketec demands a jury trial on all issues so triable.


**STARK & STARK**
A Professional Corporation


By:  /s/ *Gene Markin*
       CRAIG S. HILLIARD, ESQ.
       GENE MARKIN, ESQ.

Dated: June 18, 2026

4924-5134-6358, v. 1

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2 & 40.1**

On behalf of Plaintiff Pocketec, I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court in this jurisdiction, or of any pending arbitration or administrative proceeding.

**STARK & STARK**
A Professional Corporation


By:  /s/ *Gene Markin*
     CRAIG S. HILLIARD, ESQ.
     GENE MARKIN, ESQ.

Dated: June 18, 2026


**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1**

Pursuant to Local Civil Rule 201.1, the undersigned counsel for Plaintiff Pocketec, hereby certifies that Plaintiff's complaint herein seeks injunctive relief, as well as damages. This action is, therefore, not appropriate for compulsory arbitration.

**STARK & STARK**
A Professional Corporation


By:  /s/ *Gene Markin*
     CRAIG S. HILLIARD, ESQ.
     GENE MARKIN, ESQ.

Dated: June 18, 2026

51

4924-5134-6358, v. 1